Jonathan Shub (SBN 237708)
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Class*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY BECHTEL, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>WALMART INC.,<br><br>                Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

Plaintiff, Cindy Bechtel ("**Plaintiff**"), on behalf of herself and all others similarly situated, brings this class action against Defendant, Walmart Inc., ("**Defendant**" or "**Walmart**"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## INTRODUCTION

1.      Defendant, Walmart, offers a variety of over-the-counter products including transdermal patches, pain relief products, and skin care products. Defendant's over-the-counter lidocaine products include a range of external pain-relieving patches and creams for pain associated with or caused by ailments such as arthritis, backache, muscle strains, sprains, and bruises.

2.      Particularly, Defendant sells, markets, and distributes "Equate" Maximum Strength Lidocaine Pain Relieving Patch (the "**Patch**") and "Equate" Maximum Strength Pain Relief Cream (the "**Cream**") (collectively, the "**Products**").

3.      Nearly every individual suffers muscle aches and pains and seeks relief for this common problem.

CLASS ACTION COMPLAINT

4.     When consumers purchase pain-relieving products the strength of the dose is an important purchasing consideration. In fact, consumers willingly pay a premium for pain-reliving products that have strong doses.[1]

5.     Defendant takes advantage of this consumer preference for strong doses and/or maximum strength by prominently representing where the one place that every consumer looks when purchasing a product – the packaging and labels themselves. In fact, Defendant touts its representation and claim right on the front of its Products' labels that the Products are "Maximum Strength" lidocaine products.

6.     Consumers including Plaintiff lack the scientific knowledge necessary to determine whether the Products are "Maximum Strength" lidocaine products or to ascertain the true nature of the quality or strength of the Products. As such, reasonable consumers must and do rely on manufacturers, like Defendant, to be transparent and properly disclose on the packaging all material information regarding the Products and their dose and strength.

---

[1] Defendant's competitors sell 4% lidocaine pain reliving patches for approximately $0.86 per patch while Defendant sells the 'maximum strength' 4% lidocaine patches sell for $1.16 per patch. *See* https://www.walmart.com/ip/Equate-Maximum-Strength-Lidocaine-Pain-Relieving-Patches-6-Count/121592299 (for Defendant's 'maximum strength' version) and https://www.walgreens.com/store/c/walgreens-lidocaine-patches/ID=300394242-product (for the competitor pricing version). Plaintiff only uses the pricing in the previous paragraph as an example to plausibly plead that Defendant does indeed charge a large premium for its Product. The specific premium on a granular level will be determined later in the case by an expert.

**CLASS ACTION COMPLAINT**

7.      However, Defendant makes this "Maximum Strength" representation in a knowingly false and deceptive manner because Defendant's Products contains only 4% lidocaine; with regard to "Patch" products, similar prescription patches manufactured by at least one of Defendant's competitors contains 5% lidocaine; with regard to "cream" products, similar creams manufactured by at least one of Defendant's competitors contain 5% lidocaine and are also available over-the-counter ("OTC") as Defendant's Products are.[2]

8.      Moreover, Defendant has not only represented that its Products are "Maximum Strength" lidocaine products, but it has also omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

9.      Defendant sells and distributes the Products employing a marketing and advertising campaign centered around claims that appeal to consumers who Defendant knows seek out strong and/or maximum doses of lidocaine to relieve their back pain and aches by touting their Products as "Maximum Strength". As such, reasonable consumers, like Plaintiff, reasonably believe that they are

---

[2] Regarding lidocaine cream products, at least one of Defendant's competitors offers a prescription lidocaine cream with a 5% concentration. *See* https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=88ca9cba-0c4a-482f-b502-ceefdb1bfbcd&type=display, *see also* https://www.drugsdepot.com/store.php/drugsdepot/pd9612367/lidocaine-5-ointment-3544-gm-by-fougera-amp-co (Last Accessed January 21, 2022).

CLASS ACTION COMPLAINT

purchasing a Lidocaine product which is at maximum strength, i.e. the highest dosage they can buy.

10.     Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that deceives and harms consumers and the public.

11.     Accordingly, Plaintiff brings this suit on behalf of herself and similarly situated consumers who purchased Defendant's Products. Plaintiff and Class Members were damaged because they would not have purchased (or would not have paid a premium) for Defendant's Products had they known the true facts regarding the Products' "Maximum Strength" representations and omissions.

12.     For all the reasons set forth herein, including but not limited to Defendant's misrepresentations and omissions regarding its "Maximum Strength" claims, Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's Products, for: (i) violations of the state consumer fraud statutes invoked below, (ii) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); (iii) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"); (iv) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"); (v) common law fraud; and (vi) unjust enrichment.

**CLASS ACTION COMPLAINT**

**THE PARTIES**

13.     Plaintiff Cindy Bechtel is a resident and citizen of California residing in Dublin, California. She purchased Equate Maximum Strength Lidocaine Pain Relieving Patches and Equate Max Strength Lidocaine Pain Relief Cream on numerous occasions during all applicable statute of limitations periods at Walmart brick and mortar retail locations in California, including in Pleasanton, California.

14.     Defendant Walmart is an Arkansas corporation, with its principal place of business and headquarters located at 702 S.W. 8th St. Bentonville, AK 72716. Defendant is a resident and citizen of Arkansas. Defendant Walmart markets, distributes, and sells Equate Maximum Strength Lidocaine Pain Relieving Patch and Equate Maximum Strength Pain Relief Cream. Defendant Walmart markets, distributes and sells the aforementioned Products to consumers throughout the United States through their brick-and-mortar locations and online through Defendant's website.

15.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

**JURISDICTION AND VENUE**

16.     This Court has personal jurisdiction over Defendant in this matter.

**CLASS ACTION COMPLAINT**

The acts and omissions giving rise to this action occurred in the state of California. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the state of California, during the relevant time period, at which time Defendant were engaged in business activities in the state of California.

17.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

18.     Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts

CLASS ACTION COMPLAINT

substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Products in this District.

## INTRADISTRICT ASSIGNMENT

19.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims herein arose in Alameda County, California and this action should be assigned to the Oakland Division.

## FACTS COMMON TO ALL CLASS MEMBERS

20.     Lidocaine is the active ingredient in Defendant's Products, and it forms the basis for Defendant's "Maximum Strength" misrepresentations on the Products' front labeling, omissions, and overall advertising and marketing campaign.

21.     "Lidocaine belongs to the family of medicines called local anesthetics. This medicine prevents pain by blocking the signals at the nerve endings in the skin."[3]

22.     Lidocaine is commonly used in products such as Defendant's Products to help with body soreness and pain.

---

[3]https://www.mayoclinic.org/drugs-supplements/lidocaine-topical-application-route/description/drg-20072776 (last accessed January 24, 2022)

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.** **_Defendant's Products Prominently Feature the "Maximum Strength" Claim_**

23.    At all relevant times, Defendant has marketed its Products in a consistent and uniform manner nationwide. Defendant sells the Products in all 50 states in their brick-and-mortar stores and through their online store.

24.    Aware of the consumer preference for strong and/or maximum doses of lidocaine in pain-relieving products to alleviate their pain, aches, and soreness, Defendant specifically advertises its Products as "Maximum Strength" lidocaine products.

25.    One attribute that consumers specifically value when purchasing any pain-relieving product is the strength of the dose.[4]

26.    Aware of this consumer preference, Defendant specifically advertises its Products as "MAXIMUM STRENGTH" Lidocaine patches. Below is an image of the Equate Maximum Strength Lidocaine Pain Relieving Patch front label[5]:

---

[4] Strength of dose is so important that nearly every manufacturer of common pain-relieving products emphasize it. *See* https://www.tylenol.com/products/tylenol-extra-strength-caplets?utm_source=google&utm_medium=cpc&utm_campaign=GO-USA-ENG-PS-Tylenol-BC-EX-RN-Brand-Core+EST&utm_content=Core&utm_term=extra+tylenol&gclid=Cj0KCQjwi7yCBhDJARIsAMWFScPTqYK8J3go53nS0bag4R7EVHQZ7ogd_3MoAMUKWoVzH4FMj8sQj9kaAtbXEALw_wcB&gclsrc=aw.ds&? (Tylenol extra strength); *see also* https://www.bayeraspirin.com/products/bayer-extra-strength-aspirin (extra strength aspirin).

[5] The labels shown in the complaint represents the labeling present, upon information and belief, of each product at the time of filing and that Plaintiff and the proposed classes read and relied on. https://www.walmart.com/ip/Equate-Maximum-Strength-Lidocaine-Pain-Relieving-Patches-6-Count/121592299 (Equate Maximum Strength Lidocaine Pain Relieving Patch); (last accessed January 24, 2022).

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
27.     Below is an image of the Equate Maximum Strength Pain Relief

12
Cream[6]:

13



14
15
16
17
18
19
20
21
22
23
24
25
[6] The labels shown in the complaint represents the labeling present, upon information and belief, of each product at the time of filing and that Plaintiff and the proposed classes read and relied on. https://www.walmart.com/ip/Equate-Max-Strength-Lidocaine-Pain-Relief-Cream-2-5-fl-oz/253155134?athbdg=L1600 (Equate Maximum Strength Pain Relief Cream); (last accessed January 24, 2022).
26
27
28

CLASS ACTION COMPLAINT

28.    As shown above, the "MAXIMUM STRENGTH" representation is located on the very center of the front label of the Products in bold lettering surrounded by a bubble that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiff and Class Members.

29.    Defendant, however, is well aware that its Products are not a "maximum strength" or maximum strength lidocaine products and deceives trusting reasonable consumers like Plaintiff to believe that they are in fact purchasing such Products while omitting from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

30.     Indeed, Defendant's over the counter Products contain only 4% lidocaine while competing prescription lidocaine products contain 5% lidocaine.[7]

31.    So, consumers can obtain a stronger dose comparable lidocaine product that is available in the market.

32.    As such, Defendant's Products are not "Maximum Strength" lidocaine products as advertised.

---

[7] "This article discusses lidocaine 5% patch products available by your doctor's prescription. While there are similar over-the-counter (OTC) varieties available, those contain a lower percentage of lidocaine." *See* https://www.spineuniverse.com/treatments/medication/prescription-lidoderm-patches-may-help-relieve-back-pain (last accessed January 24, 2022)

**CLASS ACTION COMPLAINT**

33.     But rather than accurately advertise its Products through its labeling, Defendant preys on consumers' desire for maximum pain relief to drive substantial profits.

34.     All reasonable consumers, including Plaintiff, read and relied on Walmart's "Maximum Strength" representations when purchasing the Products.

35.     Defendant's "Maximum Strength" representation was material to Plaintiff's and Class Members' decision to purchase the Product.

36.     Defendant's marketing efforts are made in order to – and do in fact – induce consumers to purchase the Products at a premium because consumers believe they are getting lidocaine products with "Maximum Strength."

37.     As shown throughout this Complaint, however, Defendant's Products are *not* "Maximum Strength" lidocaine products. Defendant's representations and omissions are false and misleading.

38.     Defendant intended for Plaintiff and Class Members to be deceived or mislead by its misrepresentations and omissions.

39.     Defendant's deceptive and misleading practices proximately caused harm to Plaintiff and the Class.

40.     Plaintiff and Class Members would not have purchased the Products or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

## PLAINTIFF BECHTEL'S FACTUAL ALLEGATIONS

41.     Plaintiff, Cindy Bechtel, purchased the Products in the past year from a Walmart brick and mortar store in Pleasanton, California for approximately $7.00 for the Patch and $5.00 for the Cream. Before purchasing the Products, Plaintiff Bechtel reviewed information about the Products on the Products' labels and the fact that the Products were being sold for personal use, and not resale. At the time of purchasing her Products, Plaintiff Bechtel also reviewed the accompanying disclosures, warranties, and marketing materials, and understood them as representations and warranties by Walmart, specifically the Patch and Cream Representations. Plaintiff Bechtel relied on these representations and warranties in deciding to purchase Walmart's Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products had she known these representations were not true. Here, Plaintiff did not receive the benefit of her bargain because Walmart's Lidocaine Patch Representations are false.

42.     As a result of Walmart's concealment, Lidocaine Patch Representations and omissions, Plaintiff Bechtel purchased the Products. Had Plaintiff known the true nature of the Products, she would not have purchased the Products.

## **FED. R. CIV. P. 9(b) ALLEGATIONS**

43.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

44.    **WHO:** Defendant, Walmart Inc., made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "Maximum Strength" lidocaine products.

45.    **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Maximum Strength" lidocaine products. Defendant omitted from Plaintiff and Class Members that the Products are not "Maximum Strength" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" lidocaine products when they are not, and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

46.   **WHEN:** Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" lidocaine products, continuously throughout the applicable Class period(s).

47.   **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "Maximum Strength" lidocaine products, were located on the very center of the front label of the Products in bold lettering surrounded by a bubble that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiff, at the point of sale in every transaction. The Products are sold in Defendant's brick and mortar stores and online store nationwide.

48.   **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

CLASS ACTION COMPLAINT

49.    **WHY:** Defendant misrepresented its Products as being "Maximum Strength" lidocaine products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiff and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

## CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this action on behalf of herself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

> **National Class**: All persons in the United States who purchased the Products.

In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

> **California Sub-Class**: All persons in the State of California who purchased the Products.

51.    Excluded from the Classes are (a) any person who purchased the Products for  resale and not for personal or household use, (b) any person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or

**CLASS ACTION COMPLAINT**

employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of legal counsel for any Defendant, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

52.     Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

53.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

54.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting

17

only individual Class Members. These common legal and factual questions include, but are limited to, the following:

a. Whether the Products contain the defect alleged herein;

b. Whether Defendant made the "MAXIMUM STRENGTH" Representations;

c. Whether Defendant had actual or imputed knowledge of the defect but did not disclose it to Plaintiff and the Classes;

d. Whether Defendant promoted the Products with false and misleading statements of fact and material omissions;

e. Whether Defendant's "MAXIMUM STRENGTH" Representations are deceptive, unfair or misleading;

f. Whether Defendant's actions and/or omissions violate California law;

g. Whether Defendant's conduct violates public policy;

h. Whether Defendant's acts, omissions or misrepresentations of material facts constitute fraud;

i. Whether Plaintiff and putative members of the Classes have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts, omissions or misrepresentations of material facts;

j. Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Classes in connection with the Products;

18

k.  Whether Plaintiff and members of the putative Classes are entitled to monetary damages and, if so, the nature of such relief; and

l.  Whether Plaintiff and members of the putative Classes are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

55.   Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the putative Classes, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Classes as a whole. In particular, Defendant has, marketed, advertised, distributed and sold Products containing the Products' "MAXIMUM STRENGTH" Representations, which are false and misleading.

56.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Products and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes, and Plaintiff and all members of the putative Classes have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic

CLASS ACTION COMPLAINT

injuries including, but not limited to, ascertainable loss arising out of Defendant's false and deceptive Lidocaine Patch Representations, as alleged herein.

57.   **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff does not have any conflicts of interest or interests adverse to those of putative Classes.

58.   **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

**CLASS ACTION COMPLAINT**

59.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

60.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

      a.  The damages suffered by each individual members of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

      b.  Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

      c.  The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

      d.  Individual joinder of all members of the Classes is impracticable;

**CLASS ACTION COMPLAINT**

e.  Absent a Class, Plaintiff and members of the putative Classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

f.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by Defendant.

g.  In the alternative, the Classes may be certified for the following reasons:

   i.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

   ii.  Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

**CLASS ACTION COMPLAINT**

iii.  Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")**
**(On Behalf of the California Sub-Class)**

61.  Plaintiff re-alleges and incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

62.  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

63.  The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

64.  Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.  The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

b.  The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

c.  The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq.; and

23

CLASS ACTION COMPLAINT

d.  The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 et seq.

65.   Unfair: Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

66.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

67.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

68.   Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

69.    As set forth herein, Defendant's "MAXIMUM STRENGTH" Representations stated on the Products' labeling and advertising is likely to mislead reasonable consumers to believe the "MAXIMUM STRENGTH" Representations regarding the Products are true.

70.    Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

71.    Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information, in particular the "MAXIMUM STRENGTH" Representations on the Products' packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

72.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct.

73.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

**CLASS ACTION COMPLAINT**

74.    Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## COUNT II
### California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500 ("FAL")
### (On Behalf of the California Sub-Class)

75.    Plaintiff repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

76.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

77.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

78.    As alleged herein, Walmart committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of it's the Products and making "MAXIMUM STRENGTH" Representations. Walmart

knew or should have known that its advertising claims have not been substantiated and are misleading and/or false.

79.     Walmart knew or should have known, through the exercise of reasonable care, that its "MAXIMUM STRENGTH" Representations were false and misleading and likely to deceive consumers and cause them to purchase Walmart's Lidocaine products.

80.     Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

81.     Plaintiff suffered injury in fact as a result of Walmart's actions as set forth herein because she purchased the Products in reliance on Walmart's false and misleading "MAXIMUM STRENGTH" Representations.

82.     Walmart's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Walmart has advertised the Products in a manner that is untrue and misleading, which Walmart knew or reasonably should have known, and omitted material information from its advertising.

83.     Walmart profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

**CLASS ACTION COMPLAINT**

84.     As a result, Plaintiff, the California Sub-Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

85.     Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the California Sub-Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

**<u>COUNT III</u>**
**California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of the California Sub-Class)**

86.     Plaintiff repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

87.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

88.     Walmart's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

**CLASS ACTION COMPLAINT**

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

89.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

90.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

91.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will provide a letter to Defendant concurrently with the filing of this Class Action Complaint or shortly thereafter with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

**CLASS ACTION COMPLAINT**

92.     Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, her reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT VI
### Fraud
### (On Behalf of the Nationwide and/or
### California Sub-Class)

93.     Plaintiff repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

94.     Plaintiff brings this cause of action on behalf of herself, the Nationwide Class and/or the California Class against Defendant, Walmart.

95.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

  a. **WHO:** Defendant, Walmart Inc., made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "Maximum Strength" lidocaine products.

**CLASS ACTION COMPLAINT**

b. **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Maximum Strength" lidocaine products. Defendant omitted from Plaintiff and Class Members that the Products are not "Maximum Strength" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" lidocaine products when they are not, and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

c. **WHEN:** Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" lidocaine products, continuously throughout the applicable Class period(s).

d. **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "Maximum Strength" lidocaine products, were located on the very center of the front label of the Products in bold

CLASS ACTION COMPLAINT

lettering surrounded by a bubble that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiff, at the point of sale in every transaction. The Products are sold in Defendant's brick and mortar stores and online store nationwide.

e. **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

f. **WHY:** Defendant misrepresented its Products as being "Maximum Strength" lidocaine products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the

CLASS ACTION COMPLAINT

express purpose of inducing Plaintiff and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

96.     As    alleged    herein,    Walmart    knowingly    made    material misrepresentations and omissions regarding the Products on the Products' labeling and packaging in the Products' advertisements, and/or on its website, specifically the "MAXIMUM STRENGTH" Representations alleged more fully herein.

97.     Defendant, Walmart, made these material "MAXIMUM STRENGTH" Representations and omissions in order to induce Plaintiff and putative Class Members to purchase the Products.

98.     Defendant,    Walmart,    knew    the    "MAXIMUM    STRENGTH" Representations regarding the Products were false and misleading but nevertheless made such representations through the marketing, advertising and on the Products' labeling. In reliance on these "MAXIMUM STRENGTH" Representations, Plaintiff and putative Class Members were induced to, and did, pay monies to purchase the Products.

99.     Had Plaintiff and the Class known the truth about the Products, they would not have purchased the Products.

**CLASS ACTION COMPLAINT**

100.   As a proximate result of the fraudulent conduct of Defendant, Walmart, Plaintiff and the putative Class paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## COUNT VII
### Unjust Enrichment
### (On Behalf of the Nationwide and/or
### California Sub-Class)

101.   Plaintiff repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

102.   Plaintiff brings this cause of action on behalf of herself, and the putative Classes against Defendant.

103.   Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein, including selling the Products containing the "MAXIMUM STRENGTH" Representations and did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

104.   Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

105.   Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Products.

106.   Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant marketed, advertised, distributed, and sold the Products, and Walmart misrepresented the nature of the Products, misrepresented their benefits and attributes, and knowingly marketed and promoted the Products with "MAXIMUM STRENGTH" Representations, which caused injuries to Plaintiff and the Class because they would not have purchased the Products based on the same representations if the true facts concerning the Products had been known.

107.   Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known the true nature of the Products and the mis-statements regarding what the Products were and what they contained.

**CLASS ACTION COMPLAINT**

108.   Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the "MAXIMUM STRENGTH" Representations made by Defendant in advertising, on Defendant's websites, and on the Products' labels and packaging were true. It is inequitable for Defendant to retain the benefit of payments under these circumstances because the "MAXIMUM STRENGTH" Representations are not true.

109.   Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

110.   When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of the Products was direct.

111.   As a direct result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, pray for relief and judgment, including entry of an order:

CLASS ACTION COMPLAINT

A.  Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B.  Directing that Defendant bear the costs of any notice sent to the Class(es);

C.  Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class(es) except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

D.  Awarding restitution and other appropriate equitable relief;

E.  Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F.  Granting an Order requiring Defendant to fully and appropriately recall the Products and/or to remove the claims on its website and elsewhere, including Lidocaine Patch Representations regarding the Products;

G.  Ordering a jury trial and damages according to proof;

H.  Awarding Plaintiff and members of the Class(es) statutory damages, as provided by the applicable state consumer protection statutes invoked above, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

I.  Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.  Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

K.  Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

L.  Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: January  24, 2022                    Respectfully submitted,

                                             */s/ Jonathan Shub*
                                             Jonathan Shub (SBN 237708)
                                             Kevin Laukaitis*
                                             **SHUB LAW FIRM LLC**
                                             134 Kings Highway E, 2nd Floor
                                             Haddonfield, NJ 08033
                                             T: 856-772-7200
                                             F: 856-210-9088
                                             jshub@shublawyers.com
                                             klaukaitis@shublawyers.com

                                             Nick Suciu*
                                             **MILBERG COLEMAN BRYSON
                                             PHILLIPS GROSSMAN PLLC**
                                             6905 Telegraph Rd., Suite 115
                                             Bloomfield Hills, MI 48301
                                             Tel: (313) 303-3472
                                             Email: nsuciu@milberg.com

                                             Charles E. Schaffer*
                                             **LEVIN, SEDRAN & BERMAN, LLP**
                                             510 Walnut Street, Suite 500
                                             Philadelphia, PA 19106
                                             Phone: (215) 592-1500
                                             Fax: (215) 592-4663
                                             cschaffer@lfsblaw.com

                                             **Pro Hac Vice* Application Forthcoming

                                             *Attorneys for Plaintiff and Putative Class
                                             Members*

CLASS ACTION COMPLAINT

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Jonathan Shub, declare as follows:

1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at Shub Law Firm LLC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if call as a witness, I could and would competently testify thereto under oath.

2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Haddonfield, New Jersey this 24th day of January, 2022.

*/s/ Jonathan Shub*
Jonathan Shub

CLASS ACTION COMPLAINT