Kevin Laukaitis*
Jonathan Shub (SBN 237708)
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

*Attorneys for Plaintiffs and the Class*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY BECHTEL, TIFFANY HANKIS, and NANCY SCHLENKER individually and on behalf of all others similarly situated,<br><br>                         Plaintiffs,<br><br>        v.<br><br>WALMART INC.,<br><br>                         Defendant. | Case No.: 3:22-cv-430<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

## CLASS ACTION COMPLAINT

Plaintiffs, Cindy Bechtel, Tiffany Hankis, and Nancy Schlenker ("**Plaintiffs**"), on behalf of themselves and all others similarly situated, bring this class action against Defendant, Walmart Inc., ("**Defendant**" or "**Walmart**"), and allege on personal knowledge, investigation of their counsel, and information and belief as follows:

## INTRODUCTION

1.      Defendant, Walmart, offers a variety of over-the-counter products including transdermal patches as well aspain relief and skin care products. Defendant's over-the-counter lidocaine products include a range of external pain-relieving patches and creams for pain associated with or caused by ailments such as arthritis, backache, muscle strains, sprains, and bruises.

2.      Particularly, Defendant sells, markets, and distributes "Equate" Maximum Strength Lidocaine Pain Relieving Patch (the "**Patch**") and "Equate" Maximum Strength Pain Relief Cream (the "**Cream**") (collectively, the "**Products**").

3.      Nearly every individual suffers muscle aches and pains and seeks relief for this common problem.

2

4.      When consumers purchase pain-relieving products the strength of the dose is an important purchasing consideration. In fact, consumers willingly pay a premium for pain-reliving products that have strong doses.[1]

5.      Defendant takes advantage of this consumer preference for strong doses and/or maximum strength by prominently representing this message on the one place that every consumer looks when purchasing these products – the packaging and labels. Defendant touts its representation right on the front of its Products' labels that the Products are "Maximum Strength" lidocaine products.

6.      Consumers including Plaintiffs lack the scientific knowledge necessary to determine whether the Products are truly "Maximum Strength" lidocaine products or even to ascertain the true nature, quality, or strength of the Products. As such, reasonable consumers must and do rely on manufacturers, like Defendant, to be transparent and properly disclose on the packaging all material information regarding the Products, which includes the Products dose and strength.

7.      However, Defendant makes this "Maximum Strength" representation in a knowingly false and deceptive manner because Defendant's Products contain

---

[1] Defendant's competitors sell 4% lidocaine pain reliving patches for approximately $0.86 per patch while Defendant sells the 'maximum strength' 4% lidocaine patches sell for $1.16 per patch. *See* https://www.walmart.com/ip/Equate-Maximum-Strength-Lidocaine-Pain-Relieving-Patches-6-Count/121592299 (for Defendant's 'maximum strength' version) and https://www.walgreens.com/store/c/walgreens-lidocaine-patches/ID=300394242-product (for the competitor pricing version). Plaintiff only uses the pricing in the previous paragraph as an example to plausibly plead that Defendant does indeed charge a large premium for its Product. The specific premium on a granular level will be determined later in the case by an expert.

**FIRST AMENDED CLASS ACTION COMPLAINT**

only 4% lidocaine. This is misleading because for "Patch" products, similar prescription patches manufactured by at least one of Defendant's competitors contain 5% lidocaine and for "cream" products, similar creams manufactured by at least one of Defendant's competitors contain 5% lidocaine and are also available over-the-counter ("OTC").[2]

8.      Indeed, Defendant has not only misrepresented that its Products are "Maximum Strength" lidocaine products, but it has also omitted from the Products' labeling that there are other prescription products available in the market that contain a higher percentage of lidocaine (*i.e.* 5%).

9.      Defendant sells and distributes the Products employing a marketing and advertising campaign centered around claims that appeal to consumers who Defendant knows seek out strong and/or "maximum strength" doses of lidocaine to relieve their back pain and aches.As such, reasonable consumers, like Plaintiffs, reasonably believe that they are purchasing a maximum strength Lidocaine product( i.e. the highest dosage they can buy).

---

[2] Regarding lidocaine cream products, at least one of Defendant's competitors offers a prescription lidocaine cream with a 5% concentration. *See* https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=88ca9cba-0c4a-482f-b502-ceefdb1bfbcd&type=display, *see also* https://www.drugsdepot.com/store.php/drugsdepot/pd9612367/lidocaine-5-ointment-3544-gm-by-fougera-amp-co (last accessed January 21, 2022).

**FIRST AMENDED CLASS ACTION COMPLAINT**

10.    Defendant's prominent and systematic mislabeling of the Products constitute a pattern of unlawful and unfair business practices that deceive and harm consumers and the public.

11.    Accordingly, Plaintiffs bring this suit on behalf of themselves and similarly situated consumers who purchased Defendant's Products. Plaintiffs and Class Members were damaged because they would not have purchased (or would not have paid a premium) for Defendant's Products had they known the true facts regarding the Products' "Maximum Strength" representations and omissions.

12.    For all the reasons set forth herein, including but not limited to Defendant's misrepresentations and omissions regarding "Maximum Strength", Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's Products for: (i) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*. ("FAL"); (ii) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"); (iii) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"); (iv) violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505, *et seq*. ("ICFA"); (v) violation of Illinois Uniform Deceptive Trade Practices Act, ILCS §§ 510/2, *et seq*. ("ILCS"); (vi) common law fraud; (vii) breach of express warranties; and (viii) unjust enrichment.

**FIRST AMENDED CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THE PARTIES

13.    Plaintiff Cindy Bechtel is a resident and citizen of California residing in Dublin, California. She purchased Equate Maximum Strength Lidocaine Pain Relieving Patches and Equate Max Strength Lidocaine Pain Relief Cream on numerous occasions during all applicable statute of limitations periods at Walmart retail locations in California, including in Pleasanton.

14.    Plaintiff Tiffany Hankis is a resident and citizen of Illinois residing in Normal, Illinois. She purchased Equate Maximum Strength Lidocaine Pain Relieving Patches on numerous occasions during 2021 at a Walmart retail location in Normal, Illinois.

15.    Plaintiff Nancy Schlenker is a resident and citizen of Illinois residing in Belleville, Illinois. She purchased Equate Maximum Strength Pain Relief Lidocaine Roll-On Cream and Equate Maximum Strength Lidocaine Pain Relief Cream on numerous occasions during all applicable periods. Most recently, Plaintiff Schlenker purchased the Equate Maximum Strength Pain Relief Lidocaine Roll-On Cream via Walmart's mobile app and also from the Walmart retail location in Granite City, Illinois.

16.    Defendant Walmart is an Arkansas corporation, with its principal place of business and headquarters located at 702 S.W. 8th St. Bentonville, Arkansas 72716. Defendant is a resident and citizen of Arkansas. Defendant Walmart markets,

6

**FIRST AMENDED CLASS ACTION COMPLAINT**

distributes, and sells Equate Maximum Strength Lidocaine Pain Relieving Patch and Equate Maximum Strength Pain Relief Cream. Defendant Walmart markets, distributes and sells the aforementioned Products to consumers throughout the United States through their retail locations and online through their website.

17.     Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

16.     This Court has personal jurisdiction over Defendant in this matter. The acts and omissions giving rise to this action occurred in the state of California. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and omissions that occurred in the state of California, during the relevant time period, at which time Defendant was engaged in business activities in the state of California.

**FIRST AMENDED CLASS ACTION COMPLAINT**

17.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

18.     Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) in this District because Defendant conducts substantial business here, has sufficient minimum contacts, and otherwise purposely avails itself of the markets through the promotion, sale, and marketing of the Products directly in this District.

## **FACTS COMMON TO ALL CLASS MEMBERS**

20.     Lidocaine is the active ingredient in Defendant's Products and forms the basis for Defendant's "Maximum Strength" misrepresentations on the Products' front labelingand its overall advertising and marketing campaign.

**FIRST AMENDED CLASS ACTION COMPLAINT**

21.   "Lidocaine belongs to the family of medicines called local anesthetics. This medicine prevents pain by blocking the signals at the nerve endings in the skin."[3]

22.   Lidocaine is commonly used in products such as Defendant's Products to help with body soreness and pain.

23.   At all relevant times, Defendant has marketed its Products in a consistent and uniform manner nationwide. Defendant sells the Products in all 50 states in their retail stores and through their online store.

24.   Aware of the consumer preference for strong and/or maximum strength doses of lidocaine, Defendant specifically advertises its Products as "Maximum Strength" lidocaine products.

25.   One attribute that consumers specifically value when purchasing any pain-relieving product is the strength of the dose.[4]

---

[3] https://www.mayoclinic.org/drugs-supplements/lidocaine-topical-application-route/description/drg-20072776 (last accessed January 24, 2022).

[4] Strength of dose is so important that nearly every manufacturer of common pain-relieving products emphasize it. *See* https://www.tylenol.com/products/tylenol-extra-strength-caplets?utm_source=google&utm_medium=cpc&utm_campaign=GO-USA-ENG-PS-Tylenol-BC-EX-RN-Brand-Core+EST&utm_content=Core&utm_term=extra+tylenol&gclid=Cj0KCQjwi7yCBhDJARIsAM
WFScPTqYK8J3go53nS0bag4R7EVHQZ7ogd_3MoAMUKWoVzH4FMj8sQj9kaAtbXEALw_
wcB&gclsrc=aw.ds&? (Tylenol extra strength); *see also*
https://www.bayeraspirin.com/products/bayer-extra-strength-aspirin (extra strength aspirin).

**FIRST AMENDED CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

26.     Aware of this consumer preference, Defendant specifically advertises its Products as "MAXIMUM STRENGTH" Lidocaine patches. Below is an image of the Equate Maximum Strength Lidocaine Pain Relieving Patch front label[5]:



---

[5] The labels shown in the complaint represents the labeling present, upon information and belief, of each product at the time of filing and that Plaintiff and the proposed classes read and relied on. https://www.walmart.com/ip/Equate-Maximum-Strength-Lidocaine-Pain-Relieving-Patches-6-Count/121592299 (Equate Maximum Strength Lidocaine Pain Relieving Patch); (last accessed January 24, 2022).

**FIRST AMENDED CLASS ACTION COMPLAINT**

27.     Below is an image of the Equate Maximum Strength Pain Relief Cream[6]:



28.     As shown above, the "MAXIMUM STRENGTH" representation is located on the very center of the front label of the Products in bold lettering surrounded by a bubble that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiffs and Class Members.

29.     Defendant, however, is well aware that its Products are not "maximum strength" or maximum strength lidocaine products and deceives

---

[6] The labels shown in the complaint represents the labeling present, upon information and belief, of each product at the time of filing and that Plaintiff and the proposed classes read and relied on. https://www.walmart.com/ip/Equate-Max-Strength-Lidocaine-Pain-Relief-Cream-2-5-fl-oz/253155134?athbdg=L1600 (Equate Maximum Strength Pain Relief Cream); (last accessed January 24, 2022).

**FIRST AMENDED CLASS ACTION COMPLAINT**

trusting reasonable consumers like Plaintiffs to believe that they are in fact purchasing such Products while omitting from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

30.    Indeed, Defendant's over the counter Products contain only 4% lidocaine while competing prescription lidocaine products contain 5% lidocaine.[7]

31.    So, consumers can obtain a stronger dose comparable lidocaine product that is available in the market.

32.    As such, Defendant's Products are not "Maximum Strength" lidocaine products as advertised.

33.    But rather than accurately advertise its Products through its labeling, Defendant preys on consumers' desire for maximum pain relief to drive substantial profits.

34.    All reasonable consumers, including Plaintiffs, read and relied on Walmart's "Maximum Strength" representations when purchasing the Products.

35.    Defendant's "Maximum Strength" representation was material to Plaintiffs' and Class Members' decision to purchase the Products.

---

[7] "This article discusses lidocaine 5% patch products available by your doctor's prescription. While there are similar over-the-counter (OTC) varieties available, those contain a lower percentage of lidocaine." *See* https://www.spineuniverse.com/treatments/medication/prescription-lidoderm-patches-may-help-relieve-back-pain (last accessed January 24, 2022)

**FIRST AMENDED CLASS ACTION COMPLAINT**

36.     Defendant's marketing efforts are made in order to – and do in fact – induce consumers to purchase the Products at a premium because consumers believe they are getting lidocaine products that are "Maximum Strength."

37.     As shown throughout this Complaint, however, Defendant's Products are *not* "Maximum Strength" lidocaine products. Defendant's representations and omissions, therefore, are false and misleading.

38.     Defendant intended for Plaintiffs and Class Members to be deceived or mislead by its misrepresentations and omissions.

39.     Defendant's deceptive and misleading practices proximately caused harm to Plaintiffs and the Class.

40.     Plaintiffs and Class Members would not have purchased the Products or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**PLAINTIFF BECHTEL**

41.     Plaintiff, Cindy Bechtel, purchased the Products in the past year from a Walmart retail store in Pleasanton, California for approximately $7.00 for the Patch and $5.00 for the Cream. Before purchasing the Products, Plaintiff Bechtel reviewed information about the Products on the Products' labels and the fact that the Products were being sold for personal use, and not resale. At the time of

**FIRST AMENDED CLASS ACTION COMPLAINT**

purchasing her Products, Plaintiff Bechtel also reviewed the accompanying disclosures, warranties, and marketing materials, and understood them as representations and warranties by Walmart, specifically the "Maximum Strength" representations. Plaintiff Bechtel relied on these representations and warranties in deciding to purchase Walmart's Products. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products had she known these representations were not true. Here, Plaintiff did not receive the benefit of her bargain because Walmart's Lidocaine "Maximum Strength" representations are false.

42.     As a result of Walmart's concealment, "Maximum Strength" representations and omissions, Plaintiff Bechtel purchased the Products. Had Plaintiff known the true nature of the Products, she would not have purchased the Products or would have been willing to purchase them for less.

**PLAINTIFF HANKIS**

43.     Plaintiff, Tiffany Hankis, purchased the Patches multiple times in the 2021 from a Walmart brick and mortar store in Normal, Illinois for approximately $7.00 for the Patch. Before purchasing the Product, Plaintiff Hankis reviewed information about the Product on the Product's label and the fact that the Product was being sold for personal use, and not resale. At the time of purchasing her Product, Plaintiff Hankis also reviewed the accompanying disclosures, warranties,

**FIRST AMENDED CLASS ACTION COMPLAINT**

and marketing materials, and understood them as representations and warranties by Walmart, specifically the "Maximum Strength" representations. Plaintiff Hankis relied on these representations and warranties in deciding to purchase Walmart's Product. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product had she known these representations were not true. Here, Plaintiff did not receive the benefit of her bargain because Walmart's "Maximum Strength" representations are false.

44.   As a result of Walmart's concealment, "Maximum Strength" representations and omissions, Plaintiff Hankis purchased the Products. Had Plaintiff known the true nature of the Products, she would not have purchased the Products or would have been willing to purchase them for less.

**PLAINTIFF SCHLENKER**

45.   Plaintiff, Nancy Schlenker, purchased the Products numerous times since 2020 via the Walmart app and from a Walmart retail store in Granite City, Illinois for approximately $5.00 for the Cream. Before purchasing the Product, Plaintiff Schlenker reviewed information about the Product on the Product's labels and the fact that the Product was being sold for personal use, and not resale. At the time she purchased each Product, Plaintiff Schlenker also reviewed the accompanying disclosures, warranties, and marketing materials, and understood

**FIRST AMENDED CLASS ACTION COMPLAINT**

them as representations and warranties by Walmart, specifically the "Maximum Strength" representations. Plaintiff Schlenker relied on these representations and warranties in deciding to purchase Walmart's Product. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products had she known these representations were not true. Here, Plaintiff did not receive the benefit of her bargain because Walmart's "Maximum Strength" representations are false.

46.    As a result of Walmart's concealment, "Maximum Strength" representations and omissions, Plaintiff Schlenker purchased the Product. Had Plaintiff known the true nature of the Products, she would not have purchased the Products or would have been willing to purchase them for less.

## FED. R. CIV. P. 9(b) ALLEGATIONS

47.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

48.    **WHO:** Defendant, Walmart Inc., made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "Maximum Strength" lidocaine products.

**FIRST AMENDED CLASS ACTION COMPLAINT**

49.   **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Maximum Strength" lidocaine products. Defendant omitted from Plaintiffs and Class Members that the Products are not "Maximum Strength" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Maximum Strength" lidocaine products when they are not, and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

50.   **WHEN:** Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "Maximum Strength" lidocaine products, continuously throughout the applicable Class period(s).

51.   **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "Maximum Strength" lidocaine products were located on the very center of the front label of the Products in bold lettering surrounded by a bubble that contrasts with the background of the packaging. Such a labeling configuration instantly catches the eye of all reasonable consumers, including

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, at the point of sale in every transaction. The Products are sold in Defendant's retail stores nationwide as well as online.

52.   **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Maximum Strength" lidocaine products even though stronger lidocaine products are available in the market. As such, Defendant's "Maximum Strength" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiffs and Class Members read and relied on Defendant's "Maximum Strength" representations and omissions before purchasing the Products.

53.   **WHY:** Defendant misrepresented its Products as being "Maximum Strength" lidocaine products and omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiffs and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

**FIRST AMENDED CLASS ACTION COMPLAINT**

1

## CLASS ACTION ALLEGATIONS

2

54.    Plaintiffs bring this action on behalf of themselves and the following

3

Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3).

4

5

Specifically, the Classes are defined as:

6

> **National Class**: All persons in the United States who
> purchased the Products during the fullest period of law.

7

8

In the alternative, Plaintiff Bechtel brings this action on behalf

9

of the following State Sub-Class:

10

11

> **California Sub-Class**: All persons in the State of
> California who purchased the Products during the fullest
> period of law.

12

13

In the alternative, Plaintiffs Hankis and Schlenker bring this

14

15

action on behalf of the following State Sub-Class:

16

> **Illinois Sub-Class**: All persons in the State of Illinois
> who purchased the Products during the fullest period of
> law.

17

18

19

55.    Excluded from the Classes are (a) any person who purchased the

20

Products for  resale and not for personal or household use, (b) any person who

21

22

signed a release of any Defendant in exchange for consideration, (c) any officers,

23

directors or employees, or immediate family members of the officers, directors or

24

employees, of any Defendant or any entity in which a Defendant has a controlling

25

26

interest, (d) any legal counsel or employee of legal counsel for any Defendant, and

27

28

**FIRST AMENDED CLASS ACTION COMPLAINT**

(e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

56.     Plaintiffs reserve the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

57.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Classes may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

58.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are limited to, the following:

    a.  Whether the Products contain the defect alleged herein;

**FIRST AMENDED CLASS ACTION COMPLAINT**

b. Whether Defendant made the "MAXIMUM STRENGTH" Representations;

c. Whether Defendant had actual or imputed knowledge of the defect but did not disclose it to Plaintiffs and the Classes;

d. Whether Defendant promoted the Products with false and misleading statements of fact and material omissions;

e. Whether Defendant's "MAXIMUM STRENGTH" Representations are deceptive, unfair or misleading;

f. Whether Defendant's actions and/or omissions violate the consumer protection statutes invoked below;

g. Whether Defendant's conduct violates public policy;

h. Whether Defendant's acts, omissions or misrepresentations of material facts constitute fraud;

i. Whether Defendant breached express warranties regarding the Products;

j. Whether Plaintiffs and putative members of the Classes have suffered an ascertainable loss of money or property or other value as a result of Defendant's acts, omissions or misrepresentations of material facts;

k. Whether Defendant was unjustly enriched at the expense of Plaintiffs and members of the putative Classes in connection with the Products;

**FIRST AMENDED CLASS ACTION COMPLAINT**

l.  Whether Plaintiffs and members of the putative Classes are entitled to monetary damages and, if so, the nature of such relief; and

m. Whether Plaintiffs and members of the putative Classes are entitled to equitable, declaratory or injunctive relief and, if so, the nature of such relief.

59.    Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the putative Classes, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the putative Classes as a whole. In particular, Defendant has, marketed, advertised, distributed and sold Products containing the Products' "MAXIMUM STRENGTH" Representations, which are false and misleading.

60.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of those of the absent Class Members in that Plaintiffs and the Class Members each purchased and used the Products and each sustained damages arising from Defendant's wrongful conduct, as alleged more fully herein. Plaintiffs shares the aforementioned facts and legal claims or questions with putative members of the Classes, and Plaintiffs and all members of the putative Classes have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiffs and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of

**FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant's false and deceptive "Maximum Strength" representations and omissions, as alleged herein.

61.   **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action. Plaintiffs do not have any conflicts of interest or interests adverse to those of putative Classes.

62.   **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiffs and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

**FIRST AMENDED CLASS ACTION COMPLAINT**

63.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all Members of the Classes, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the members of the Classes as a whole.

64.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.   The damages suffered by each individual member of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b.   Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.   The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

d.   Individual joinder of all members of the Classes is impracticable;

**FIRST AMENDED CLASS ACTION COMPLAINT**

e.  Absent a Class, Plaintiffs and members of the putative Classes will continue to suffer harm as a result of Defendant's unlawful conduct; and

f.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and members of the putative Classes can seek redress for the harm caused by Defendant.

g.  In the alternative, the Classes may be certified for the following reasons:

i.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant;

ii.  Adjudications of claims of the individual members of the Classes against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

**FIRST AMENDED CLASS ACTION COMPLAINT**

iii.   Defendant has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CLAIMS FOR RELIEF
### COUNT I
**California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(Plaintiff Bechtel On Behalf of the California Sub-Class)**

65.   Plaintiff Bechtel repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

66.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

67.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

68.   As alleged herein, Walmart committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of it's

26

the Products and making "MAXIMUM STRENGTH" representations and omissions. Walmart knew or should have known that its advertising claims have not been substantiated and are misleading and/or false.

69.     Walmart knew or should have known, through the exercise of reasonable care, that its "MAXIMUM STRENGTH" representations and omissions were false and misleading and likely to deceive consumers and cause them to purchase Walmart's Lidocaine products.

70.     Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

71.     Plaintiff Bechtel suffered injury in fact as a result of Walmart's actions as set forth herein because she purchased the Products in reliance on Walmart's false and misleading "MAXIMUM STRENGTH" representations and omissions.

72.     Walmart's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Walmart has advertised the Products in a manner that is untrue and misleading, which Walmart knew or reasonably should have known, and omitted material information from its advertising.

73.     Walmart profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

**FIRST AMENDED CLASS ACTION COMPLAINT**

74.    As a result, Plaintiff Bechtel, the California Sub-Class members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

75.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff Bechtel, on behalf of herself and the California Sub-Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT II
**California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(Plaintiff Bechtel On Behalf of the California Sub-Class)**

76.    Plaintiff Bechtel repeats and realleges the allegations in the previous paragraphs as if fully set forth herein.

77.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

78.    Walmart's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff Bechtel and Class Members, and violated and continue to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

**FIRST AMENDED CLASS ACTION COMPLAINT**

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

79.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

80.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

81.     In compliance with the provisions of California Civil Code § 1792, Plaintiff Bechtel sent written notice to Defendant on February 1, 2022, informing Defendant of her intention to seek damages under California Civil Code § 1750, et seq.  The letter expressly stated that it was sent on behalf of Plaintiff Bechtel and "all other persons similarly situated." Defendant has failed to adequately address the allegations contained in Plaintiff Bechtel's letter.

82.     Accordingly, Plaintiff Bechtel seeks monetary damages, attorney's fees, and any other relief award by the Court from Defendant for its violations of the CLRA.

**FIRST AMENDED CLASS ACTION COMPLAINT**

## COUNT III
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 Ill. Comp. Stat. §§ 505, *et seq*.
### (Plaintiffs Hankis and Schlenker On behalf of the Illinois Subclass)

83. Plaintiff Hankis and Plaintiff Schlenker (hereby the "Illinois Plaintiffs") incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

84. Illinois Plaintiffs bring this claim individually and on behalf of the Illinois Subclass.

85. The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

86. Illinois Plaintiffs and other members of the Illinois Subclass, as purchasers of the Products, are consumers within the meaning of the ICFA given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

87. Defendant knowingly concealed, suppressed, and consciously omitted material facts to Illinois Plaintiffs and other members of the Illinois Subclass knowing that consumers would rely on the advertisements and packaging to purchase the Products.

**FIRST AMENDED CLASS ACTION COMPLAINT**

88.     Illinois Plaintiffs and the other Illinois Subclass members reasonably relied upon Defendant's omissions.

89.     Defendant's conduct, as described herein, took place within the State of Illinois and constitutes unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

90.     Defendant violated the ICFA by, inter alia, representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

91.     Defendant advertised the Products with intent not to sell it as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

92.     Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

93.     Defendant engaged in misleading and deceptive advertising that represented that the Products were safe. Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products would be impacted by its omissions and would reasonably believe Walmart's false and misleading "MAXIMUM STRENGTH" representations and omissions.

94.     Defendant intended that Illinois Plaintiffs and each of the other Illinois Subclass members would reasonably rely upon the material omissions concerning the true nature of the Products.

95.     Defendant's concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Illinois Plaintiffs and each of the other Illinois Subclass members to be deceived about the true nature of the Products.

96.     As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Illinois Plaintiff and the Illinois Subclass members have suffered ascertainable loss of money caused by Defendant's omissions.

97.     Had they been aware of the true nature of the Products, Illinois Plaintiffs and Illinois Subclass members either would have paid less for the Products or would not have purchased them at all.

98.     Illinois Plaintiffs and the Illinois Subclass members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 815 ILCS 505/10a of the ICFA. Illinois Plaintiffs and the Illinois Subclass members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

**FIRST AMENDED CLASS ACTION COMPLAINT**

## COUNT IV

**Violations of the Illinois Uniform Deceptive Trade Practices Act**
**ILCS §§ 510/2, *et seq*.**
**(Plaintiffs Hankis and Schlenker On behalf of the Illinois Subclass)**

99.    Plaintiff Hankis and Plaintiff Schlenker (hereby the "Illinois Plaintiffs") incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

100.    Illinois Plaintiffs bring this claim individually and on behalf of the Illinois Subclass for violations of the Illinois Uniform Deceptive Trade Practices Act, ILCS §§ 510/2, et seq.

101.    Defendant constitutes a "person" as defined by 815 ILCS §§ 510/1(5).

102.    Defendant engaged in deceptive trade practices in the conduct of their business, in violation of 815 ILCS §§ 510/2(a), including:

103.    Defendant represented to Illinois Plaintiffs and the Illinois Subclass that the Products had approval or characteristics that they did not have;

104.    Defendant represented to Illinois Plaintiffs and the Illinois Subclass that the Products were of a particular standard, quality, or grade when they were actually of another;

105.    Defendant advertised to Illinois Plaintiffs and the Illinois Subclass goods with intent not to sell them as advertised;

106.    Defendant engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

33

**FIRST AMENDED CLASS ACTION COMPLAINT**

107.   Defendant represented that consumers' purchases of the Products conferred or involved rights that the transactions did not have or involve.

108.   The facts that Defendant misrepresented, concealed, suppressed or omitted the "MAXIMUM STRENGTH" representations and omissions as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

109.   Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and was likely to deceive a consumer acting reasonably in the same circumstances.

110.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

111.   The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Illinois Plaintiffs and Illinois Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

112.   As a direct and proximate result of Defendant's deceptive acts and practices, Illinois Plaintiffs and Illinois Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary

**FIRST AMENDED CLASS ACTION COMPLAINT**

and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products.

113.    Illinois Plaintiffs and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees

**COUNT V**
**Fraud**
**(Plaintiffs On Behalf of the Nationwide Class)**

114.    Plaintiffs repeat and reallege the allegations in the previous paragraphs as if fully set forth herein.

115.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class against Defendant, Walmart.

116.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

    a.    **WHO:** Defendant, Walmart Inc., made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "MAXIMUM STRENGTH" lidocaine products.

b. **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "MAXIMUM STRENGTH" lidocaine products. Defendant omitted from Plaintiff and Class Members that the Products are not "MAXIMUM STRENGTH" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "MAXIMUM STRENGTH" lidocaine products when they are not, and has omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

c. **WHEN:** Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "MAXIMUM STRENGTH" lidocaine products, continuously throughout the applicable Class period(s).

d. **WHERE:** Defendant's material misrepresentations and omissions, that the Products are "MAXIMUM STRENGTH" lidocaine products,

**FIRST AMENDED CLASS ACTION COMPLAINT**

were located on the very center of the front label of the Products in bold lettering surrounded by a bubble that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiffs, at the point of sale in every transaction. The Products are sold in Defendant's brick and mortar stores and online store nationwide.

e. **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "MAXIMUM STRENGTH" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "MAXIMUM STRENGTH" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%). And as discussed in detail throughout this Complaint, Plaintiffs and Class Members read and relied on Defendant's "MAXIMUM STRENGTH" representations and omissions before purchasing the Products.

f. **WHY:** Defendant misrepresented its Products as being "MAXIMUM STRENGTH" lidocaine products and omitted from the Products'

**FIRST AMENDED CLASS ACTION COMPLAINT**

labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) for the express purpose of inducing Plaintiffs and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

117. As alleged herein, Walmart knowingly made material misrepresentations and omissions regarding the Products on the Products' labeling and packaging in the Products' advertisements, and/or on its website, specifically the "MAXIMUM STRENGTH" representations and omissions alleged more fully herein.

118. Defendant, Walmart, made these material "MAXIMUM STRENGTH" representations and omissions in order to induce Plaintiff and putative Class Members to purchase the Products.

119. Defendant, Walmart, knew the "MAXIMUM STRENGTH" representations and omissions regarding the Products were false and misleading but nevertheless made such representations through the marketing, advertising and on the Products' labeling. In reliance on these "MAXIMUM STRENGTH" representations and omissions, Plaintiffs and putative Class Members were induced to, and did, pay monies to purchase the Products.

**FIRST AMENDED CLASS ACTION COMPLAINT**

120.   Had Plaintiffs and the Class known the truth about the Products, they would not have purchased the Products.

121.   As a proximate result of the fraudulent conduct of Defendant, Walmart, Plaintiffs and the putative Class paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## COUNT VI
### Breach of Express Warranties
### (Plaintiffs On Behalf of the Nationwide Class)

122.   Plaintiffs repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

123.   Plaintiffs bring this Count on behalf of themselves and the Nationwide Class.

124.   Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description. See, e.g., Cal. Com. Code § 2313(1)(a)-(b); N.Y. U.C.C. Law § 2- 313(1)(a)-(b); and 810 ICLS 5/2-313(1)(a)-(b).

**FIRST AMENDED CLASS ACTION COMPLAINT**

125.   Defendant, as the marketer, distributor and/or seller, expressly warranted that the Products were "MAXIMUM STRENGTH" lidocaine products.

126.   Plaintiffs formed a contract with Defendant at the time they purchased the Products. The terms of that contract include the promises and affirmations of fact that Defendant makes through an extensive, uniform, nationwide marketing campaign, and on its product labels. Among other affirmations of fact and promises described herein, Defendant represents that the Products are "MAXIMUM STRENGTH" lidocaine products.

127.   Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs and Class Members regarding the Products became the basis of the bargain between Defendant and Plaintiffs and the Classes, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

128.   Contrary to Defendant's affirmations of fact and promises, the Products are not a "MAXIMUM STRENGTH" lidocaine product. Defendant breached the express warranties and/or contract obligations by placing the Products into the stream of commerce and selling the Products to consumers, when the Products are not "MAXIMUM STRENGTH" lidocaine products, because other comparable lidocaine products exist in the market that contain more lidocaine than Defendant's product.

**FIRST AMENDED CLASS ACTION COMPLAINT**

129.   As such, Defendant's Products do not conform to the express warranties because the representations are false or misleading.

130.   At all times relevant herein, Defendant was aware, or should have been aware, of the misrepresentations regarding the Products.

131.   Defendant made the "MAXIMUM STRENGTH" representation with the intention that Plaintiffs and Class members would rely on the "Maximum Strength" representation. Plaintiffs and Class members did, in fact, rely on Defendant's "MAXIMUM STRENGTH" representation when deciding to purchase the Products.

132.   Where required, Defendant's affirmations of fact and promises were material to Plaintiffs and Class Members decisions to purchase the Products.

133.   All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or Class Members.

134.   On February 1, 2022, Plaintiff Bechtel, through counsel, provided notice to Defendant, apprising Defendant of its breach of warranties. On June 3, 2022, Plaintiffs Hankis and Schlenker, though counsel, provided electronic notice to Defendant apprising Defendant of its breach of warranties. Defendant has failed to adequately remedy the issues contained in Plaintiffs' letters.

**FIRST AMENDED CLASS ACTION COMPLAINT**

135.   Defendant's counsel acknowledged receipt of Plaintiffs' pre-suit notice letter by responding to Plaintiffs' counsel's email regarding service of the pre-suit notice letter.

136.   Defendant also has notice of the conduct related to its breach of warranties by way of the original complaint filed in this case on January 24, 2022.

137.   As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and Class Members have been damaged because they did not receive the Product as specifically warranted by Defendant. Plaintiffs and Class Members did not receive the benefit of the bargain and suffered damages by purchasing the misrepresented Product.

## COUNT VII
### Unjust Enrichment
### (Plaintiffs On Behalf of the Nationwide Class)

138.   Plaintiffs repeat and reallege the allegations in the previous paragraphs as if fully set forth herein.

139.   Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.

140.   Plaintiffs and putative Class Members conferred a benefit on Defendant when they purchased the Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein, including selling the Products containing the "MAXIMUM STRENGTH" representations and omissions and did

**FIRST AMENDED CLASS ACTION COMPLAINT**

not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiffs and putative Class Members.

141.   Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

142.   Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Products.

143.   Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant marketed, advertised, distributed, and sold the Products, and Walmart misrepresented the nature of the Products, misrepresented their benefits and attributes, and knowingly marketed and promoted the Products with "MAXIMUM STRENGTH" representations and omissions, which caused injuries to Plaintiffs and the Class because they would not have purchased the Products based on the same representations if the true facts concerning the Products had been known.

**FIRST AMENDED CLASS ACTION COMPLAINT**

144.    Plaintiffs and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known the true nature of the Products and the mis-statements regarding what the Products were and what they contained.

145.    Defendant either knew or should have known that payments rendered by Plaintiffs and putative Class Members were given and received with the expectation that the "MAXIMUM STRENGTH" representations and omissions made by Defendant in advertising, on Defendant's websites, and on the Products' labels and packaging were true. It is inequitable for Defendant to retain the benefit of payments under these circumstances because the "MAXIMUM STRENGTH" representations and omissions are not true.

146.    Plaintiffs and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

147.    When required, Plaintiffs and Class Members are in privity with Defendant because Defendant's sale of the Products was direct.

148.    As a direct result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits,

**FIRST AMENDED CLASS ACTION COMPLAINT**

and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated members of the Classes, pray for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiffs as Class Representatives and appointing Plaintiffs' counsel as Class Counsel;

B. Directing that Defendant bear the costs of any notice sent to the Class(es);

C. Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiffs and the members of the Class(es);

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendant to fully and appropriately recall the Products and/or to remove the claims on its website and elsewhere, including "Maximum Strength" representations regarding the Products;

G. Ordering a jury trial and damages according to proof;

H. Awarding Plaintiffs and members of the Class(es) statutory damages, as provided by the applicable state consumer protection statutes invoked above;

**FIRST AMENDED CLASS ACTION COMPLAINT**

I.   Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.   Awarding attorneys' fees and litigation costs to Plaintiffs and members of the Class(es);

K.   Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

L.   Ordering such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demands a trial by jury of all claims in this Complaint so triable.

Dated: June 10, 2022                    Respectfully submitted,

_/s/ Jonathan Shub____
Jonathan Shub (SBN 237708)
Kevin Laukaitis (*pro hac vice*)
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Nick Suciu (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nsuciu@milberg.com

Charles E. Schaffer (*pro hac vice*)
David C. Magagna (*pro hac vice*)

**FIRST AMENDED CLASS ACTION COMPLAINT**

**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

*Attorneys for Plaintiffs and Putative Class Members*

**FIRST AMENDED CLASS ACTION COMPLAINT**

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Jonathan Shub, declare as follows:

1.    I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at Shub Law Firm LLC, counsel of record for Plaintiffs in this action. I have personal knowledge of the facts set forth in this declaration and, if call as a witness, I could and would competently testify thereto under oath.

2.    The First Amended Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the First Amended Complaint occurred in the Northern District of California.

I declare under the penalty of perjury under the laws of the State of California, New Jersey, and the United States that the foregoing is true and correct and that this declaration was executed at Haddonfield, New Jersey this 10th day of June, 2022.

*/s/ Jonathan Shub*
Jonathan Shub

**FIRST AMENDED CLASS ACTION COMPLAINT**